# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

**ALLEN, U. S. Atty., v. OMAHA LIVE STOCK COMMISSION CO. et al.**

**SULLINGER, U. S. Atty., v. DRUMM–STANDISH COMMISSION CO. et al.**

(Circuit Court of Appeals, Eighth Circuit.   July 16, 1921.)

### Nos. 5799, 5802.

1. **Appeal and error ⬳863—Appellate court will not consider merits on appeal from order granting preliminary injunction.**

    Ordinarily the appellate court, on an appeal from an order granting a preliminary injunction will not go into the merits of the case further than necessary to determine whether the trial court exceeded a reasonable discretion in making the order, especially where the rights of the parties can only be determined on full proof of the facts.

2. **Appeal and error ⬳843 (2)—Constitutional law ⬳46 (1)—Court will determine constitutional questions only when absolutely necessary.**

    Only when it is absolutely necessary will courts pass on a constitutional question, and this applies with greater force on an appeal from an interlocutory injunction, granted on the bill after a motion to dismiss has been denied and no answer tendered.

3. **Injunction ⬳85 (2)—May be granted to restrain prosecutions by federal officers under unconstitutional statute.**

    A court of equity may control by injunction the action of federal officers threatening to institute criminal proceedings under an unconstitutional act which will seriously affect property rights.

4. **Injunction ⬳74—Equity has jurisdiction to review action of executive officer, in absence of statutory provision for review.**

    An order of a board, commission, or executive officer, prescribing maximum rates for services performed, if no provision for review by the courts is made, entitles one who claims the rates to be confiscatory to a review by a court of equity, especially if the penalties for violation of the order are so severe that every one would be deterred from testing it in a criminal prosecution.

5. **Injunction ⬳144—Bills held to entitle complainants to preliminary injunction.**

    Bills, alleging that complainants are live stock commission brokers, with an established business, that their rates of charge for their services are just and reasonable, and that rates prescribed by order of the Secretary of Agriculture, without notice under Lever Act, § 5 (Comp. St. 1918, Comp.

---

St. Ann. Supp. 1919, § 3115⅛g), are unjust, unreasonable, and confiscatory and will deprive complainants of their property without due process of law, *held* to entitle complainants to a preliminary injunction to restrain enforcement of such order, in view of the fact that the statute makes no provision for its review and of the severity of the penalties prescribed for its violation.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suits in equity by the Omaha Live Stock Commission Company and others against Thomas S. Allen, United States Attorney for the District of Nebraska, and by the Drumm-Standish Commission Company and others against James W. Sullinger, United States Attorney for the Western District of Missouri. From orders granting preliminary injunctions, defendants appeal. Affirmed.

James B. Horigan, Asst. to the Solicitor, U. S. Department of Agriculture, of Washington, D. C. (R. W. Williams, Solicitor, U. S. Department of Agriculture, of Washington, D. C., James W. Sullinger, U. S. Atty., of King City, Mo., T. S. Allen, U. S. Atty., of Lincoln, Neb., and George H. English, Asst. U. S. Atty., of Kansas City, Mo., on the brief), for appellants in both cases.

Francis A. Brogan, of Omaha, Neb. (Alfred G. Ellick and Anan Raymond, both of Omaha, Neb., on the brief), for appellees in No. 5799.

I. N. Watson, of Kansas City, Mo. (John B. Gage, Henry N. Ess, and R. E. Watson, all of Kansas City, Mo., on the brief), for appellees in No. 5802.

Before HOOK, Circuit Judge, and TRIEBER and NEBLETT, District Judges.

TRIEBER, District Judge. The issues in both of these cases being identical, they were, by agreement of counsel, presented and argued as one case, and this opinion will apply to both.

The appeals are under section 129, Judicial Code (Comp. St. § 1121) from temporary injunctions, enjoining appellants, United States attorneys, from instituting prosecutions against appellees for failure and refusal to comply with certain orders of the Secretary of Agriculture, made under the provisions of section 5 of the act of Congress of August 10, 1917 (chapter 53, 40 St. 276), generally referred to as the "Lever Act" (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g).

[1] The complaints, which are identical in both cases, are very lengthy, and, in addition to the allegations hereinafter set out, attack the constitutionality of this section, as well as the power of the President and Secretary of Agriculture to make the order and regulations sought to be enjoined. But, as this is an appeal from a temporary injunction only, which was granted on the bills of complaint and affidavits accompanying them, after a motion of defendants to dismiss the complaints had been overruled, we do not deem it necessary to pass on these constitutional questions on these appeals, although an

appellate court may on such an appeal consider the entire case, and, if the complaint fails to state a cause of action, reverse the order granting the temporary injunction and direct a decree of dismissal. Shubert v. Woodward, 167 Fed. 47, 61, 92 C. C. A. 509, and authorities there cited. But ordinarily the appellate court on such an appeal will not go into the merits of the case, further than necessary to determine whether the trial court exceeded a reasonable discretion in making the order, especially where the rights of the parties can only be determined upon full proof of the facts. City of Owensboro v. Cumberland Tel. & T. Co., 174 Fed. 739, 747, 99 C. C. A. 1.

[2] If the complaint challenges the constitutionality of a legislative act, and also raises other questions of equitable cognizance, on which the action can be determined without passing on the constitutionality of the act, courts will not pass on it. Only when it is absolutely necessary will they pass upon a constitutional question. Weyman-Bruton Co. v. Ladd, 231 Fed. 898, 901, 146 C. C. A. 94. And this applies with greater force on appeals from an interlocutory injunction granted on the complaint, after a motion to dismiss has been denied and no answer tendered. Therefore, leaving out of consideration the constitutional questions raised, the question is, Are the other allegations in the complaint sufficient to warrant the granting of the interlocutory injunction?

Plaintiffs charge: That they are live stock commission brokers, operating, the one in case No. 5802 in Kansas City, Mo., and the other in case No. 5799, in Omaha, Neb., under federal licenses issued to them pursuant to the provisions of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r). That their business is handling live stock in their respective markets, and that the services rendered by them are personal services, into which the elements of judgment, ability, experience, and responsibility enter. That they had been engaged in that business for a number of years, and built up, prior to the order of the Secretary, a large and exclusive trade, and to prevent them from carrying it on would cause great and irreparable loss. That in the course of their business they have heretofore charged various commissions for their services, which were based upon the cost to them of conducting the business and a fair and reasonable return for their skill, experience, and services, and the expenses necessarily incurred therein. That during the years 1919 and 1920 the cost of conducting their business was greatly increased by reason of being required to pay higher salaries to their employees, and the increased cost of material needed in the conduct of their business, and in order to meet this increased cost and leave them a just return for their service it was necessary to increase their commissions and charges slightly. This increase was made July 19, 1920. The complaint sets out the schedule of charges put in force by the plaintiffs on that day. That on August 12, 1920, the Secretary of Agriculture, acting, as stated by him, under authority of the President, notified plaintiffs that after an investigation of the charges made by those engaged in the live stock commission business, he had found the charges to be unjust, unreasonable, discriminatory, and unfair, and ordered them to discontinue

said charges, and only charge the lower rates established by him, which are set out in the notice, said lower charges to take effect August 23, 1920.

The bill charges that no notice had been given them by the Secretary of Agriculture of any investigation and no opportunity afforded them of producing evidence that their charges were just and reasonable, and had they been given an opportunity to produce evidence, they could have shown their charges to be just and reasonable; that no finding that their charges were unjust and unreasonable was made by the President, except that made by the Secretary of Agriculture; that plaintiffs have not abided by the directions of the Secretary, but continued to collect the charges, which they had collected prior to the orders made by the Secretary. It is further charged that, if compelled to adhere to the charges fixed by the Secretary, which were those in force prior to July 19, 1920, they will be compelled to discharge a number of employees, curtail the facilities for conducting their business, which would materially reduce the efficiency of their services as such live stock commission brokers; that if their licenses are suspended by reason of failing to comply with the Secretary's schedule of charges their business will be destroyed.

They deny that their charges were unjust, unreasonable, or unfair, and that, by reason of having uniformly dealt fairly and honestly with their patrons, and not having charged unjust, unreasonable, or unfair commissions or charges, a relation of trust and confidence has been built up between them and their patrons, and as a result they now enjoy a valuable good will in their business.

It is further alleged that the schedule of commissions and charges established by the purported order of the Secretary of Agriculture is unjust, unreasonable, and confiscatory, and if enforced they would be deprived of their property without due process of law; that the penalties prescribed by the act for failing to comply with any orders of the President, made by authority of said section 5 of the Lever Act, are, not only a revocation of their license to continue their business, but severe punishments are to be imposed on them, a fine not exceeding $5,000, or imprisonment for not more than two years or both for such failure to comply with the order, or doing business after revocation of their license, and every independent transaction shall constitute a separate offense; that they have refused to comply with said order, believing it to be unconstitutional and void, and, unless the defendants are enjoined from instituting such prosecutions or revoking their licenses, plaintiffs and their employees having been threatened by the defendants with a revocation of their license and criminal prosecutions under the act and the penalties being so enormous and imprisonment so severe, they are deterred from questioning the validity of the order, and unless defendants are restrained from instituting prosecutions against them they cannot continue their business.

It is also alleged that such prosecutions would involve them in contractual difficulties and litigation with their clients for whom they render services, and result in the total destruction of their business.

The temporary injunction requires each plaintiff to execute a bond

in the penal sum of $25,000, conditioned that they will deposit in court every two weeks such portions of the commissions and charges in excess of those specified and named as reasonable in the orders of the Secretary of Agriculture, and file an account showing by whom or on whose behalf such moneys were collected by the complainants as commissions and charges, for the sale of live stock, giving the address of all such patrons.

[3] That a court of equity may control by injunction the action of federal officials, threatening to institute criminal proceedings under an unconstitutional act, which will seriously affect property rights, is no longer an open question. Such actions have been frequently brought and sustained. Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024; Hammer v. Dagenhart, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; United States v. L. Cohen Grocery Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. ——, are among late cases.

[4] Nor can there be any doubt at this day that an order of a board, commission, or executive officer, prescribing maximum rates for services performed, if no provisions for a review by the courts is made, entitles one who claims the rates to be confiscatory to a review by a court of equity, and especially if the penalties for violations of the order or regulation are so severe that every one would be deterred from testing them in a criminal prosecution. Ex parte Young, 209 U. S. 123, 147, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Missouri Pacific Ry. v. Tucker, 230 U. S. 340, 349, 33 Sup. Ct. 961, 57 L. Ed. 1507; Wadley Southern Ry. v. Georgia, 235 U. S. 651, 662, 35 Sup. Ct. 214, 59 L. Ed. 405; Oklahoma Operating Co. v. Love, 252 U. S. 333, 337, 40 Sup. Ct. 338, 340 (64 L. Ed. 596). In the last-cited case, the court even went so far as to hold that—

"If upon final hearing the maximum rates fixed should be found not to be confiscatory, a permanent injunction should nevertheless issue to restrain enforcement of penalties accrued pendente lite, provided that it also be found that plaintiff had reasonable ground to contest them as being confiscatory."

In Wadley Southern Ry. v. Georgia, supra, the railroad company, instead of applying to a court of equity for relief, against an order of the Railroad Commission of the state, claimed to be invalid, permitted itself to be sued for the penalty. Having been found guilty, the cause was finally removed by writ of error to the Supreme Court of the United States. That court, affirming the judgment of the state court, said:

"If the Wadley Southern Railroad Company had availed itself of that right and—with reasonable promptness—had applied to the courts for a judicial review of the order, and if, on such hearing, it had been found to be void, no penalties could have been imposed for past or future violations. If in that proceeding, the order had been found to be valid, the carrier would thereafter have been subject to penalties for any subsequent violations of what had thus been judicially established to be a lawful order, though not so in respect of violations prior to such adjudication."

It is hardly necessary to say that the penalties under this act which makes "every independent transaction a separate offense" are such that

persons would be deterred from testing the order in criminal prosecutions.

[5] Are the allegations in the complaint, which are not denied, sufficient to entitle the plaintiffs to a temporary injunction, leaving out of consideration the question of unconstitutionality of the act? Without reciting all these allegations which are set out hereinbefore, they clearly charge that the rates or commissions charged by them are just and reasonable, and that the rates prescribed by the Secretary of Agriculture are unjust, unreasonable, noncompensatory and confiscatory, and if enforced plaintiffs would be deprived of their property without due process of law. This, if true—and on this record they must be taken as true—not being denied, the court committed no error in granting the temporary injunction. If there were room for doubt, it would be resolved in favor of the order of the court below, as an appellate court will not reverse an interlocuory injunction, if the record shows any reasonable grounds to sustain it, especially when such ample provision has been made for the protection of all parties, who may be affected by the interlocutory injunction, as has been done by the court below in these cases.

The rates made by the Secretary were without notice or an opportunity to plaintiffs to be heard, nor does the act provide for a review of the acts of the President or the official authorized by him to act for him in making such an order. Ohio Valley Co. v. Ben Avon Borough, 253 U. S. 287, 40 Sup. Ct. 527, 64 L. Ed. 908. The plaintiffs allege that they are noncompensatory and confiscatory, and would be taking their property without due process of law. The only opportunity to determine these charges is by a proceeding in equity, such as has been instituted, unless they were willing to take the risk of the severe punishment provided by the act, if their contentions in a criminal prosecution should not be sustained, as was done in Wadley Southern Ry. v. Georgia, supra. This they were unwilling to do, and instead have applied to a court of equity for an interlocutory injunction, pending the determination of the validity of the act and order complained of.

Upon the facts set out in the complaints, without passing on the constitutional question raised and ably argued, we hold that the order of the trial court should be affirmed.