**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**Filed 5/13/96**          **TENTH CIRCUIT**

_____

COLORADO INTERSTATE GAS COMPANY,          )
                                          )
         Petitioner,                      )
                                          )
v.                                        )          No. 95-9505
                                          )
FEDERAL ENERGY REGULATORY COMMISSION,     )
                                          )
         Respondent,                      )
                                          )
QUESTAR PIPELINE COMPANY; PUBLIC SERVICE  )
COMPANY OF COLORADO; CHEYENNE LIGHT,      )
FUEL AND POWER COMPANY; CONOCO INC.; OXY  )
USA INC.; COLORADO SPRINGS UTILITIES; AMOCO )
PRODUCTION COMPANY; ANADARKO PETROLEUM    )
CORPORATION; UNION PACIFIC RESOURCES COMPANY; )
CHEVRON, U.S.A., INC.; MARATHON OIL COMPANY; )
WILLIAMS FIELD SERVICES COMPANY,          )
                                          )
         Intervenors.                     )

_____

**ON APPEAL FROM FEDERAL ENERGY REGULATORY COMMISSION**
**DISTRICT 0090-0**
**(RP87-30-041)**

_____

Donald C. Shepler (Daniel F. Collins, James Howard and Kenneth M. Albert with him on the briefs), Colorado Interstate Gas Company, Washington, D.C., for Petitioner.

Joel M. Cockrell (Susan Tomasky, General Counsel; Jerome M. Feit, Solicitor; Randolph Lee Elliott on the brief), Federal Energy Regulatory Commission, Washington, D.C., for Respondent.

Gordon Gooch (Mark R. Haskell with him on the brief), Travis & Gooch, Washington, D.C., for Intervenors.

_____

Before **BRORBY, MCWILLIAMS** and **LUCERO**, Circuit Judges.

_____

**BRORBY**, Circuit Judge.

_____

Colorado Interstate Gas Company (hereafter "CIG") petitions this court to modify or set aside two orders issued by the Federal Energy Regulatory Commission (hereafter "the Commission"): *Colorado Interstate Gas Co.*, 69 F.E.R.C. ¶ 61,371 (1994) and *Colorado Interstate Gas Co.*, 62 F.E.R.C. ¶ 61,049 (1993). Because CIG is not "aggrieved" within the meaning of § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), we dismiss the petition for lack of jurisdiction.

## I

CIG is a "natural-gas company" within the meaning of § 2(6) of the Natural Gas Act, 15 U.S.C. § 717a(6), and is therefore subject to regulation by the Commission. 15 U.S.C. § 717(b). CIG operates a system comprised of two segments, which it designates as its Northern System and its Southern System. *Colorado Interstate Gas Co.*, 62 F.E.R.C. ¶ 61,049, at 61,261 (1993). The Northern System begins in Green River, Wyoming, proceeds eastward through Rawlins, Laramie, and Cheyenne, Wyoming, then turns southward into Colorado, and ends in Watkins, Colorado, just east of Denver. *Id.* The Southern System begins in Watkins. *Id.* Some of the natural gas remains in Watkins to serve markets in Colorado's Front Range. *Id.* The Southern System proceeds to CIG's storage field in Latigo, Colorado, and then southeast to Kit Carson Station. *Id.* The Southern System splits at Kit Carson Station, with lines extending into Kansas, Oklahoma, and Texas. *Id.* Both the Northern and Southern Systems connect with pipelines owned by other companies. *Id.* CIG's operations include approximately 3,000 miles of small diameter, low pressure gathering lines.

2

In May 1991, CIG filed a partial settlement resolving all issues arising during the course of its rate-making proceedings except for those specified in Article VI of the settlement. *Colorado Interstate Gas Co.*, 62 F.E.R.C. ¶ 61,049, at 61,261 (1993). The Commission approved the settlement in August 1991. *Id.*; *see Colorado Interstate Gas Co.*, 56 F.E.R.C. ¶ 61,212 (1991). An administrative law judge conducted a hearing regarding the issues listed in Article VI of the May 1991 settlement and issued an initial decision. *Colorado Interstate Gas Co.*, 56 F.E.R.C. ¶ 63,018 (1991). One of the issues listed in Article VI was whether the Commission has jurisdiction over the rates CIG charges third-parties for gathering services and, if so, whether CIG's gathering rates should be required to be posted in its tariff, and whether a systemwide rate or area gathering rates are appropriate. *Id.*, ¶ 63,018, at 65,065-66. The administrative law judge resolved the jurisdictional issue in the Commission's favor. *Id.* The administrative law judge noted the Eighth Circuit had recently considered whether the Commission has jurisdiction under the Natural Gas Act, 15 U.S.C. § 717-717w, to " 'regulate the rates that natural gas pipeline companies charge third-party interstate transportation shippers for moving natural gas on gathering facilities owned by the pipeline.' " *Id.,* ¶ 63,018, at 65,065 (quoting *Northern Natural Gas Co. v. F.E.R.C.*, 929 F.2d 1261, 1262-63 (8th Cir.), *cert. denied*, 502 U.S. 856 (1991)). The administrative law judge correctly stated the Eighth Circuit answered that question in the affirmative, broadly holding that the Commission has jurisdiction to " 'regulate rates charged for transportation on the pipeline's own gathering facilities performed in connection with jurisdictional interstate transportation.' " *Id.* (quoting *Northern Natural Gas,* 929 F.2d at 1263). The administrative law judge rejected CIG's contention *Northern Natural Gas* is distinguishable and concluded the Commission has jurisdiction to regulate the rates CIG charges third-parties for gathering services, "so long as the gathering rates for CIG which are

3

related pertain to 'transportation on the pipeline's own gathering facilities performed in connection with jurisdictional interstate transportation.'" *Id.* (quoting *Northern Natural Gas,* 929 F.2d at 1263).

The Commission later affirmed the administrative law judge's determination and reaffirmed the rule announced in *Northern Natural Gas*, 929 F.2d 1261. *Colorado Interstate Gas Co.*, 62 F.E.R.C. ¶ 61,049, at 61,269 (1993). It also rejected CIG's contention *Northern Natural Gas* does not apply because "on its system, open access transportation and gathering are completely unbundled from each other and are separate and distinct services." *Id.* The Commission relied on certain language in *Northern Natural Gas*, 929 F.2d at 1270, for the proposition that "[a] pipeline may not evade ... regulation [of the total price of jurisdictional services] by unbundling one related component of that service and charg[ing] whatever it wishes for that portion of the service it claims is beyond the jurisdiction of the Commission." *Id.* It also rejected CIG's contention the rule applied by the administrative law judge and the *Northern Natural Gas* court was "arbitrary, capricious, or unreasonable," inasmuch as it allowed the Commission to exercise jurisdiction over gathering services performed by interstate pipeline companies, but did not allow it to exercise jurisdiction over intrastate pipelines and independent gatherers. *Id.,* ¶ 61,049, at 61,269-70.

CIG later sought rehearing, but the Commission denied its petition. *Colorado Interstate Gas Co.*, 69 F.E.R.C. ¶ 61,371 (1994). The Commission noted it had "recently re-affirmed its long-held view that the gathering services performed by interstate pipeline companies are properly subject to its jurisdiction under the [Natural Gas Act]," *id.,* ¶ 61,371, at 62,402 (citing *Arkla Gathering Services Co.*, 67 F.E.R.C. ¶ 61,257, *order on reh'g*, 69 F.E.R.C. ¶ 61,280 (1994)), and held that rule applied

4

to CIG. It also held CIG's claims on rehearing were moot because CIG entered into a settlement agreement, in which it agreed to "post firm gathering rates designed in a manner similar to its firm transportation rates" starting October 1, 1993, and "agreed to abide by the settlement's provisions concerning the design of its gathering rates through September 30, 1996." *Id.*; *see Colorado Interstate Gas Co.*, 64 F.E.R.C. ¶ 61,277, at 62,957-58 (approving settlement), *order on reh'g*, 65 F.E.R.C. 61,264 (1993). For the sake of convenience, the settlement referred to in the order denying rehearing will be referred to hereafter as the "October 1993 settlement."

CIG then petitioned this court to modify or set aside the orders affirming the administrative law judge's decision, *Colorado Interstate Gas Co.*, 62 F.E.R.C. ¶ 61,049 (1993), and denying its petition for rehearing, *Colorado Interstate Gas Co.*, 69 F.E.R.C. ¶ 61,371 (1994), because, according to CIG, the Commission lacks jurisdiction under the Natural Gas Act, 15 U.S.C. § 717-717w, to regulate CIG's gathering rates.

## II

Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), "allows only parties 'aggrieved' by FERC orders to seek review in the court of appeals." *Williams Gas Processing Co. v. F.E.R.C.*, 17 F.3d 1320, 1322 (10th Cir. 1994). "To be considered 'aggrieved' under section 19(b), we have held that a party must demonstrate a 'present and immediate' injury in fact, or 'at least ... a looming unavoidable threat' of injury." *Id.* (quoting *Nat'l Ass'n of Regulatory Utility Comm'rs v. F.E.R.C.*, 823 F.2d 1377, 1381 (10th Cir. 1987)); *see also Sunray DX Oil Co. v. Federa; Power Comm'n*, 351 F.2d 395, 400 (10th Cir. 1965) ("[A]ggrievement within the meaning of § 19(b) is a status conferred

5

by Congress upon a party who ... is likely to suffer injury by an administrative determination, and ... aggrievement must be present and immediate, or at least must be demonstrably a looming unavoidable threat") (citations and internal quotation marks omitted). Furthermore, the petitioner bears the burden of alleging "facts sufficient to prove the existence of a concrete, perceptible harm of a real, non-speculative nature." *CNG Transmission Corp. v. F.E.R.C.*, 40 F.3d 1289, 1292 (D.C. Cir. 1994) (citations and internal quotation marks omitted); *see also Williams Gas Processing Co.*, 17 F.3d at 1322 ("The alleged injury must be concrete, perceptible harm of a real, non-speculative nature") (citation and internal quotation marks omitted). Nor is it sufficient for the petitioner to show merely that harm will result; rather, "[j]udicial review is limited to 'orders of definitive impact, where judicial abstention would result in irreparable injury to a party.'" *CNG Transmission Corp.*, 40 F.3d at 1292 (quoting *Papago Tribal Util. Auth. v. F.E.R.C.*, 628 F.2d 235, 238 (D.C. Cir.), *cert. denied*, 449 U.S. 1061 (1980)).

In Article X of the October 1993 settlement, CIG agreed to "(1) offer its gathering services on a non-discriminatory basis; (2) design its gathering rates in a manner that is similar to CIG's transportation rates; (3) post its gathering rates; and (4) report the actual gathering rates that CIG charges." *Colorado Interstate Gas Co.*, 64 F.E.R.C. ¶ 61,277, at 62,957-58, *order on reh'g*, 65 F.E.R.C. ¶ 61,264 (1993). CIG further agreed that, regardless of the outcome of any subsequent court or administrative challenges to the Commission's jurisdiction to regulate its gathering rates, CIG would "continue to abide by the provisions of Article X through September 30, 1996." *Id.* In light of the October 1993 settlement, the Commission contends, and we agree, that its conclusion it has jurisdiction to regulate CIG's gathering rates has no "present and immediate" impact on CIG

6

and that a decision from this court will not immediately relieve CIG of the consequences of the Commission's legal conclusion, because CIG has voluntarily allowed the Commission to regulate its gathering rates through September 30, 1996, regardless of the outcome of its petition in this court. *Williams Gas Processing Co.*, 17 F.3d at 1322. Furthermore, the Commission contends, and we again agree, that the potential impact of its legal conclusion does not present an "unavoidable threat" of irreparable injury to CIG. Rather, the Commission's generally applicable legal conclusion it has jurisdiction under the Natural Gas Act to "regulate rates charged for transportation on [a] pipeline's own gathering facilities performed in connection with jurisdictional interstate transportation," *Northern Natural Gas,* 929 F.2d at 1263, will impact CIG if and only if three contingencies occur. First, CIG must continue to provide gathering services. Second, those gathering services must be "performed in connection with jurisdictional interstate transportation," which is a factual issue that must be resolved by the Commission. Third, even if the first two conditions are met, CIG will suffer no injury unless the Commission, in its discretion, actually chooses to regulate CIG's gathering activities in a way CIG finds sufficiently objectionable that it is willing to expend its resources to challenge the Commission's jurisdiction. Although CIG asserts that each of these contingencies is likely to occur, it has not persuaded us that each contingency is unavoidable, and we are unwilling to base our exercise of jurisdiction on speculation regarding what may or may not occur in future rate-making proceedings. Furthermore, even if the contingencies do occur, and CIG suffers injury as a result in some future proceeding, that injury will not be irreparable, because CIG would be free to seek review in this court at that time. We therefore conclude, under the particular circumstances of this case, that CIG is not "aggrieved" under § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), and that we lack jurisdiction over its petition.

7

Our conclusion is consistent with our decision in *Amerada Petroleum Corp. v. Fed. Power Comm'n*, 285 F.2d 737 (10th Cir. 1960). In that case, the petitioner sought review of the Commission's order denying petitioner's offer in compromise settling certain natural gas prices. *Id.* at 739. We sustained the Commission's motion to dismiss the petition because the order rejecting the offer in compromise did not cause the petitioner to suffer irreparable injury, given that "[i]nquiry into the reasonableness of [the petitioner's] rates [was] still before the Commission and until that is determined, no injury to its rights can result." *Id.* at 740. Our decision in *Amerada Petroleum Corp.* therefore stands for the proposition that unless the petitioner demonstrates it will suffer irreparable injury or that there are other extraordinary circumstances present, we lack jurisdiction to review an order issued by the Commission that did not cause immediate injury and whose potential for injury is contingent on a subsequent proceeding before the Commission which can be reviewed by this court in a future petition.

Contrary to CIG's contention, our conclusion in this case in no way conflicts with our decision in *Nat'l Ass'n of Regulatory Utility Comm'rs*, 823 F.2d 1377. In that case, we held the petitioners were aggrieved because the challenged decision would be res judicata in future administrative proceedings and could not be collaterally attacked through a petition for review of those future proceedings. *Id.* at 1382. Our decision in *Nat'l Ass'n of Regulatory Utility Comm'rs* is consistent with our decision in *Amerada Petroleum Corp.*, because in the former the petitoners would have suffered irreparable harm absent immediate review, whereas the petitioner in the latter case would not. The decision we reviewed in *Nat'l Ass'n of Regulatory Utility Comm'rs* would have been res judicata as to the petitioners in that case because the Commission found, as a matter of fact,

that the pipeline facilities at issue were "dedicated to interstate commerce." *Id.* at 1380 (*quoting Mountain Fuel Supply Co.*, 24 F.E.R.C. ¶ 61, 120 (1983)). In contrast, CIG does not seriously contend that the facts are not as the Commission found them to be and we see no basis for such a contention. Instead, CIG challenges only the Commission's purely legal, generally applicable conclusion it has jurisdiction under the Natural Gas Act to regulate gathering performed "in connection with jurisdictional interstate transportation." Therefore, although the challenged legal conclusion will likely be followed in future proceedings under principles of *stare decisis*, it is not *res judicata*. In addition, if applied in future proceedings, the Commission's generally applicable legal conclusion can be challenged in a subsequent petition for review by this court, and our dismissal of CIG's current petition for lack of subject matter jurisdiction will not prejudice a future decision.

Nor are we persuaded that the two other cases cited in CIG's brief, *ANR Pipeline Co. v. F.E.R.C.*, 771 F.2d 507 (D.C. Cir. 1985), and *Connecticut Light & Power Co. v. F.E.R.C.*, 627 F.2d 467 (D.C. Cir. 1980), require that we conclude CIG is aggrieved. In *ANR Pipeline Co.*, the District of Columbia Circuit held the petitioner was aggrieved because it would "likely be bound" by the challenged decision in any subsequent filing by Great Lakes to increase certain rates and it was "unavoidable" that Great Lakes would seek a rate increase. *ANR Pipeline Co.*, 771 F.2d at 516. Given the contingencies involved in this case and the need for this court to speculate regarding how those contingencies might be resolved, we cannot conclude, as did the District of Columbia Circuit, that it is sufficiently likely CIG will be injured by the challenged decisions that CIG should be considered aggrieved at this time, nor are we persuaded the harm, should it occur at all, will be

9

unavoidable and irreparable given that the Commission's decision can be challenged in a future proceeding before this court. Also, in contrast to the situation in *Connecticut Light & Power Co.*, 627 F.2d at 469, the settlement in this case is final and it resolves all of the issues raised in this petition, and the issue in this case is not "capable of repetition, yet evading review." *Id.* (quoting *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515 (1911)). Although the legal conclusion challenged in this case may well arise in other administrative proceedings involving CIG and/or other pipeline companies, the matter can be addressed through a petition for review from those proceedings.

Finally, CIG makes much of the provision in the settlement agreement providing that, notwithstanding that agreement, "all parties retain their rights to continue to challenge Commission jurisdiction over gathering rates and gathering services." *Colorado Interstate Gas Co.*, 64 F.E.R.C. ¶ 61,277, at 62,957-58, *order on reh'g*, 65 F.E.R.C. 61,264 (1993). This agreement has no legal significance in this context. It is well established that "where our jurisdiction is not authorized by statute, it cannot be manufactured by consent." *Stubblefield v. Windsor Capital Group*, 74 F.3d 990, 993 n. 3 (10th Cir. 1996); *see also Nat'l Ass'n of Regulatory Utility Comm'rs*, 823 F.2d at 1381 n. 9. Nor is it significant that our decision may delay review of the challenged decision and may force CIG to undergo additional administrative and judicial proceedings. Mere inconvenience does not amount to "aggrievement" under § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b). *Williams Gas Processing Co.*, 17 F.3d at 1322-23.

**DISMISSED.**

10