COMMON CAUSE, APPELLANT, v. NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 28, 1977—Decided July 1, 1977.

266

Before Judges ALLCORN, CRANE and BOTTER.

*Mr. William E. Graves* argued the cause on behalf of appellant (*Messrs. Fuerst, Singer and Jacob,* attorneys).

*Mr. Edward J. Farrell* argued the cause on behalf of respondent.

*Mr. John P. Sheridan, Jr.,* argued the cause on behalf of intervenor Bateman for Governor Committee.

PER CURIAM. This matter is before us as an appeal pursuant to *R.* 2:5–1(e) to review the validity of a rule known

as *N. J. A. C.* 19:25–15.36 adopted by respondent New Jersey Election Law Enforcement Commission, purportedly under the authority of the New Jersey Campaign Contributions and Expenditures Reporting Act, *N. J. S. A.* 19: 44A–1 *et seq.* with respect to contributions to the winner of the primary election for the office of Governor for the purpose of paying off primary election expenses.

We have denied appellant's motion for a stay of the application of the regulation but in view of the public interest have accelerated the appeal. See *DeSimone v. Greater Englewood Housing Corp. No. 1,* 56 *N. J.* 428, 434–435 (1970); *Clifton v. Zweir,* 36 *N. J.* 309, 327–328 (1962); *R.* 2:9–2. Leave to intervene on behalf of the Bateman for Governor Committee has been granted. The Citizens for Byrne 'Committee was notified of this appeal and elected not to move to intervene; however, its counsel attended oral argument.

██ We first deal with the contention of the Commission that Common Cause lacks standing to initiate this review. Common Cause asserts that it is a nonprofit District of Columbia corporation with over 12,000 dues-paying members in New Jersey, and that among its major purposes is to make government more responsive through reform of the political process. These assertions are not controverted. We have no doubt that the New Jersey members of appellant organization have an interest in the validity of the regulation under review. We perceive of no reason why Common Cause, as a representative organization, should be denied access to our courts for the purpose of presenting the views of its constituent members. *Crescent Park Tenants Ass'n v. Realty Eq. Corp. of N. Y.,* 58 *N. J.* 98 (1971); *Scenic Hudson Preservation Conf. v. Federal Power Comm.,* 354 *F.* 2d 608 (2 Cir. 1965), *cert. den. sub nom. Consolidated Edison Co. of New York, Inc. v. Scenic Hudson Preservation Corp.,* 384 *U. S.* 941, 86 *S. Ct.* 1462, 16 *L. Ed.* 2d 540 (1966); *Common Cause v. Democratic National Comm.,* 333 *F. Supp.* 803, 808 (D. D. C. 1971). *Cf. Sierra Club v. Morton,* 405 *U. S.* 727,

92 *S. Ct.* 1361, 31 *L. Ed.* 636 (1972). But see *Sierra Club v. Morton,* 348 *F. Supp.* 219 (N. D. Cal. 1972). We hold, therefore, that appellant has sufficient standing to bring the instant appeal. Moreover, the intervenor, Bateman for Governor Committee, contends that a portion of the regulation is invalid. Thus, wholly apart from the question of the standing of appellant, we would have to pass upon the validity of a substantial part of the regulation in any event.

The regulation under attack, *N. J. A. C.* 19:25–15.36, provides as follows:

19:25–15.36 Payment of primary expenses after date of primary

No person or political committee shall make any contribution or contributions to a candidate, his primary election campaign treasurer or to any other person or committee on behalf of the winner of the primary election for the office of Governor in the aggregate in excess of $600.00 after the date of the primary election for the purpose of paying off primary election expenses of such winning candidate, provided, however, that the foregoing provision shall not be applicable in the case of a winning candidate who has elected not to receive public funding. All such contributions shall be reported in the regular fifteen day post-election report or the subsequent sixty day reports with respect to such primary. Such contributions shall not be deemed to be contributions to the candidate in the general election for any purpose, including the $600.00 contribution limit. Nothing herein contained shall be construed to permit expenditures before or after the date of a primary election by the state committee, county committees, or municipal committees of any political party with respect to the primary election expenses of the winner of a primary election for the office of Governor or of any other primary election candidate.

This regulation shall not be applicable to primary election expenses incurred in connection with the primary election held on June 7, 1977, but shall be applicable to primary election expenses of every primary election held after that date for nomination of candidates for the office of Governor.

Common Cause contends that the language of the regulation which permits contributions up to the amount of $600 to be made to the winner of a gubernatorial primary election for the purpose of paying off primary election expenses is in conflict with *N. J. S. A.* 19:44A–29(b). It also contends that

the exemption of candidates who elect not to receive public funding lacks legislative authorization. It further contends that the Commission is without power to declare that the provisions of *N. J. S. A.* 19:44A–29(b) shall not be applicable to the primary election expenses incurred in connection with the primary election of 1977.

The Bateman for Governor Committee attacks that portion of the regulation which limits to $600 the amount of money a contributor may give to the winner of a gubernatorial primary. It argues that the statute, *N. J. S. A.* 19:44A–1 *et seq.,* was not intended to limit the amount of contributions after primary election day if such contributions were for the sole purpose of paying off debts incurred in the primary campaign. It further contends that the interpretation of *N. J. S. A.* 19:44A–29(b) urged by appellant would render the statute unconstitutional in that it discriminates without justifiable reason between primary winners and losers.

It is argued on behalf of the Commission that the statute is not clear on its face; that the interpretation of the Commission is reasonable; that the interpretation is consistent with the legislative history, and that the action of the Commission in providing for prospective rather than immediate operation is a reasonable and valid exercise of its power to adopt regulations to implement the provisions of the statute pursuant to *N. J. S. A.* 19:44A–38.

The critical statutory provisions are *N. J. S. A.* 19:44A–29(a) and (b). They provide as follows:

a. No person, candidate or political committee, otherwise eligible to make political contributions, shall make any contribution or contributions to a candidate, his campaign treasurer or deputy campaign treasurer, a State committee, county committee or municipal committee of any political party, or to any other person or committee, in aid of the candidacy of or in behalf of a candidate for election to the office of Governor in a general election in the aggregate in excess of $600.00, except as provided by this section. No candidate for election to the office of Governor in a general election and no campaign treasurer or deputy campaign treasurer of such candidate shall knowingly accept from any person, candidate or political committee, any contribution or contributions in aid of such candidate's

candidacy or in behalf of such candidate in the aggregate in excess of $600.00, except as provided by this section.

b. No person or political committee, except the State committee, county committees and municipal committees of any political party, otherwise eligible to make political contributions, shall make any contribution or contributions to a candidate, his campaign treasurer, a State committee, county committee or municipal committee of any political party, or to any other person or committee, in behalf of the winner of a primary election for the office of Governor in the aggregate in excess of $600.00 for any purpose after the date of such primary election. No candidate for election to the office of Governor in a general election who has won the preceding primary election, and no campaign treasurer or deputy campaign treasurer of such candidate shall knowingly accept from any person or political committee, except the State committee, county committees and municipal committees of any political party, any contribution or contributions in the aggregate in excess of $600.00 for any purpose after the date of such primary election.

In our view the statutory pronouncement is clear: contributions in excess of $600 may not be made on behalf of the winner of the gubernatorial primary "for any purpose" after the date of the primary election. We discern no legislative intention in any of the statutory language to distinguish contributions intended to be used for the purpose of paying off primary election expenses from contributions intended for any other purpose. Those sections of the statute dealing with gubernatorial elections, *N. J. S. A.* 19:44A–27 *et seq.,* do not apply to primary campaigns; they are expressly intended to apply only to general election campaigns for the office of Governor. *N. J. S. A.* 19:44A–28. However, in adopting the provisions of *N. J. S. A.* 19:44A–29(b), the Legislature evinced the clear purpose of establishing a cut-off date for unrestricted contributions and of restricting the amount of money which could be contributed to the winner of a primary election after the primary election. The use of the all-inclusive phrase, "for any purpose," leaves no doubt in our minds that contributions for the purpose of paying off primary election expenses were to be limited in the same manner as contributions for any other purpose. In the absence of an explicit indication of special meaning we must interpret the

words utilized in a statute in their ordinary and well understood meaning. *Service Armament Co. v. Hyland,* 70 *N. J.* 550 (1976); *N. J. S. A.* 1:1–1.

We find no constitutional infirmity, as the Bateman for Governor Committee suggests, in the fact that the statute limits the dollar amount of individual contributions to winners of the gubernatorial primary but imposes no such limit on the amount of contributions to the losers. The declared purpose of the statute is to provide that general election campaigns for the office of Governor shall be financed with public support so that the candidates will be free from the improper influence that large individual contributions would tend to exert. *N. J. S. A.* 19:44A–27. In the light of the statutory purpose, the distinction between winners and losers clearly rests upon a real and substantial relation to the basic object of the legislation. *Guill v. Hoboken,* 21 *N. J.* 574, 582 (1956). We do not find the distinction to be irrational or invidiously discriminatory. *Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp.,* 71 *N. J.* 249, 280–291 (1976).

We next consider the proviso of the regulation which purports to exempt candidates who have elected not to receive public funding. The exemption of candidates who elect not to accept public support is not required as a matter of equal protection. See *Buckley v. Valeo,* 424 *U. S.* 1, 96 *S. Ct.* 612, 46 *L. Ed.* 2d 659 (1976). Nor is it required as a matter of statutory interpretation. We have found no language in the statute which expresses a purpose of exempting candidates who choose not to accept public support from the operation of the act. The grant of authority to "adopt such rules and regulations as may be required to implement the provisions of this act and to carry out its purpose," *N. J. S. A.* 19:44A–38, does not empower the Commission to subvert or enlarge upon the statutory policy. *Abelson's, Inc. v. N. J. State Board of Optometrists,* 5 *N. J.* 412, 424 (1950).

Finally, we consider the validity of the last paragraph of the regulation under review which declares that the regulation shall not be applicable to primary election expenses

incurred in connection with the primary election held on June 7, 1977. The net effect of this language would be to postpone the operation of the campaign contribution limitations of *N. J. S. A.* 19:44A–29(b) until the gubernatorial election of 1981. The Commission seeks to justify this action on the ground that some of the gubernatorial candidates may have misunderstood the meaning of the statute and that it would be unfair to subject them to a limitation during the current campaign. However, the Legislature in specific terms has provided for the time when compliance with the provisions of the act will be required. *N. J. S. A.* 19:44A–28 provides that "[t]he provisions of this act shall apply to the general election campaign for the office of Governor to be held in November, 1977 and to all subsequent campaigns." The regulation attempts to establish an effective date in contravention to the specific terms of the statute; such a regulation lacks legal efficacy. *N. J. Chamber of Commerce v. N. J. Elec. Law Enforcem. Comm'n,* 135 *N. J. Super.* 537, 550–551 (Ch. Div. 1975); *Kamienski v. Bd. of Mortuary Science,* 80 *N. J. Super.* 366, 370 (*App. Div.* 1963).

█ In sum, we hold that the provisions of *N. J. A. C.* 19:25–15.36 contravene the policy and express provisions of the New Jersey Campaign Contributions and Expenditures Reporting Act, *N. J. S. A.* 19:44A–1 *et seq.,* and are consequently illegal and void.